

U S BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

United States Bankruptcy Judge

Signed December 21, 2012

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Terry and Denise Hymond,<br>Debtors. | § § § | Case No. 09-45346-dml-13 |
| Mack B. Neal,<br>Debtor. | § § § | Case No. 09-44128-rfn-13 |
| Dustin Kyle and Brittany Rae Dwinnell,<br>Debtors. | § § § | Case No. 08-41356-rfn-13 |
| Jacob Matthew Short,<br>Debtor. | § § | Case No. 10-47210-dml-13 ✓ |

## MEMORANDUM OPINION

In these cases Chapter 13 Trustees Tim Truman and Alice Whitten move to compel the debtors to turn over tax refunds that the debtors received for tax year 2011. The Trustees have sought similar relief in hundreds of other cases.

The facts of these cases are similar in several relevant respects. Each debtor filed for bankruptcy before 2011. Each debtor has confirmed a chapter 13 plan and has received a tax

refund for tax year 2011. The Trustees have requested that the debtors turn over any refund that exceeds $2,000. The debtors have failed to do so, prompting the Trustees to file their motions to compel turnover.

The Trustees' demands for turnover find support in local General Order 2010-01 and in the orders confirming the debtors' plans. The General Order is premised upon the practice of the IRS prior to 2011 of sending to the Trustees tax refunds owed to chapter 13 debtors. The General Order authorizes the Trustees to pay the first $2,000 of any refund that they receive to the debtor or, if the debtor's plan is delinquent, to direct the refund to delinquent plan payments not to exceed $2,000. General Order 2010-01, Part 9. It further provides that unless otherwise ordered by the court, any refund in excess of $2,000 may be kept by the Trustees and paid pro rata to the debtor's unsecured creditors. *Id.* The confirmation orders authorize the Trustees to receive, endorse and apply tax refunds in accordance with the General Order.

These procedures went unchallenged by debtors prior to 2011. That year the IRS, overwhelmed by the administrative burden of tracking the debtors' returns and processing those returns by hand, decided that it would no longer send refunds to the Trustees. *See generally, United States v Carroll*, 667 F.3d 742 (6th Cir. 2012). The IRS's reversal of position presented at least two problems for the Trustees. First, in the absence of tax returns from the debtors, the Trustees had little means of determining if debtors were entitled to refunds in the first place. Second, upon learning of a particular debtor's entitlement to a refund, it was possible, if not likely, that the debtor had already spent the money.

These circumstances led the Trustees to move this court to compel the debtors to turn over their 2011 tax returns and, consistent with the intent of the General Order and plan provisions, any refunds in excess of $2,000. This court has entered orders requiring debtors to

2

turn over tax returns and no party has yet challenged the court's authority to compel such relief. However, the debtors in these cases do challenge the court's authority to compel them to turn over tax refunds.

Because General Order 2010-01 and the orders confirming the debtors' plans authorize the Trustees to receive tax refunds, but do not compel the debtors to turn over tax refunds to the Trustees, they provide no authority for this court to grant the relief sought by the Trustees. If such authority exists, it must be found in section 542 of the Bankruptcy Code. In general, that section requires any entity in possession, custody or control of "property that the trustee may use, sell, or lease under section 363" to deliver such property or its value to the trustee unless it is of inconsequential value or benefit to the estate. 11 U.S.C. § 542(a). Under section 363, property that a trustee may "use, sell or lease" is necessarily "property of the estate." 11 U.S.C. § 363. So, the first question posed by these cases is whether the tax refunds are property of the estate. The Trustees contend that they are and the Hymonds, Dwinnells, and Neal agree. Debtor Short argues otherwise.

Short's argument is based on a conflict between sections 1306(a) and 1327 of the Bankruptcy Code. Section 1306(a) defines property of the estate in a chapter 13 case as (1) all property of the kind described in section 541[1] as of the commencement of the case, (2) all property of the kind described in section 541 acquired after the commencement of the chapter 13 case but before closing, dismissal or conversion, and (3) earnings from services performed by the debtor during the case. 11 U.S.C. § 1306(a). By itself, section 1306(a) would leave no doubt that the tax refunds in question here are property of the estate. At a minimum, tax refunds are

---

[1] Section 541 provides that "property of the estate" includes all legal or equitable interests of the debtor in property as of the commencement of the case, certain community property, certain property recovered by a trustee, inheritances, property settlements and insurance proceeds acquired or that the debtor is entitled to acquire before or within 180 days after the commencement of a case, proceeds of property of the estate, and property that the estate acquires after the commencement of a case. 11 U S.C § 541(a).

3

merely returns of post-petition earnings or money traceable to other property described in section 541 that the debtors used to pay taxes.

But, section 1327 complicates the analysis. That section states that except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all property of the estate in the debtor free and clear of creditors' claims. 11 U.S.C. § 1327(b),(c). Neither the debtors' plans nor the orders confirming them "provides otherwise." So, under section 1327, property of the debtors' estates "vested" in the debtors.

Short argues that the word "vest" in section 1327(b) means something more than mere possession; it means that the bankruptcy estate no longer exists. And, according to Short, if there is no estate, there is no property of the estate.

Short's argument is not new. In response to it, courts have developed five approaches when attempting to reconcile sections 1306(a) and 1327. These approaches are more fully described and analyzed in two opinions issued by courts of this district: *Woodward v. Taco Bueno Rest., Inc*, 2006 U.S. Dist. LEXIS 89135 (N.D. Tex. 2006) (Means, J.); *In re Powers*, 435 B.R. 385 (Bankr. N.D. Tex. 2010) (Jones, J.).

The approach advanced by Short is known as the estate termination approach. It presumes that all property of the estate vests in the debtor upon confirmation and that the estate terminates at that point. *Cal. Franchise Tax Bd. v. Jones (In re Jones)*, 420 B.R. 506, 514-515 (9th Cir. B.A.P. 2009). Under this approach, there is no property of the estate after confirmation, only property of the debtor. *Id.* This approach is criticized because it fails to give effect to the language of section 1306(a), which specifically provides that all property acquired between commencement of the case and closing, conversion or dismissal is property of the estate. *Woodward*, 2006 U.S. Dist. LEXIS 89135 at *15-*16; *Powers*, 435 B.R. at 387.

Under the second approach, the estate transformation approach, only property necessary to complete the confirmed plan is property of the estate and all remaining property belongs to the debtor. *Telfair v. First Union Mortg Corp*, 216 F.3d 1333, 1340 (11th Cir. 2000). This approach is criticized because it also ignores the language of section 1306(a) which, by its terms, makes no distinction between "property necessary to complete the plan," and any other property. *Woodward*, 2006 U.S. Dist. LEXIS 89135 at *18-*19; *Powers*, 435 B.R. at 388.

The third approach, the estate preservation approach, holds that all property of the estate at confirmation remains property of the estate until discharge, dismissal or conversion. *See, Security Bank of Marshaltown v Neiman*, 1 F.3d 687, 690-691 (8th Cir. 1993) (holding that confirmation is not relevant to determining whether property is property of the estate; rather, the only relevant events are commencement of the case and dismissal, closing or conversion of the case). This approach is criticized because it fails to address the language of section 1327(b), which specifically provides for the vesting of property of the estate in the *debtor* upon confirmation of the plan. *Woodward*, 2006 U.S. Dist. LEXIS 89135 at *16-*17; *Powers*, 435 B.R. at 388.

The approach that has gained the most support among courts is the estate reconciliation approach. Under that approach, property that exists at the time of confirmation vests in the debtor, but the estate continues to exist after confirmation and includes the debtor's earnings and property acquired post-confirmation. *Waldron v Brown (In re Waldron)*, 536 F.3d 1239, 1243 (11th Cir. 2008). This approach is favored because it gives effect to the language of both sections 1306(a) and 1327(b). *Powers*, 435 at 388.

At least one bankruptcy court of this district has approved of the estate reconciliation approach. In *In re Powers*, Judge Robert Jones endorsed the view that "estate property that

5

exists at the time of confirmation vests in the debtor per section 1327(b), but property acquired by the debtor after confirmation becomes estate property under 1306(a)(1)." *Powers*, 435 B.R. at 389. He elaborated by saying that "[i]f the latter described property may potentially enhance the dividend to the creditors, then the debtor, the trustee, or an unsecured creditor can move under section 1329 to modify the debtor's chapter 13 plan to increase the debtor's payments." *Id*

In *Woodward v. Taco Bueno*, Judge Terry Means adopted a new approach centered on the interpretation of "vesting" as used in section 1327. In doing so, he concluded that section 1327 vests in the debtor "an immediate and fixed right to the future enjoyment of the bankruptcy estate, whatever assets it consists of, free and clear of any claims of any creditor provided for by the confirmed plan." *Woodward*, 2006 U.S. Dist. LEXIS 89135 at *26. He explained the nature of this right as follows:

> Although this is an immediate and fixed right, it is one the debtor does not enjoy until he has faithfully completed his obligation under the plan and is entitled to a discharge. Under this interpretation, after confirmation, the bankruptcy estate continues to exist and assets may be added to the estate in accordance with section 1306, but the debtor is immediately vested with the right to future enjoyment of the assets in that estate free and clear of any creditor claims provided for by the plan once he faithfully completes his obligations under the plan and is entitled to a discharge.

*Id.*

If one is inclined to acknowledge that property of the estate continues to exist after plan confirmation – as this court is – one might question whether it is necessary to adopt any particular approach that explains its existence. This court believes that is necessary because the court cannot predict the context in which the issue may be presented in the future, and the demands of precedential consistency require a firm footing in one approach or the other.

In that regard, this court believes the estate reconciliation approach adopted by Judge Jones in *In re Powers* most closely comports with its understanding of the operation of sections

1306 and 1327. Not only does that approach give effect to both sections 1306(a) and 1327(b), but it has the practical effect of avoiding a substantial denuding of section 1329. For example, if earnings or other property acquired post-confirmation by the debtor are not property of the estate, on what basis would a creditor or trustee ever have to seek modification of a plan to increase payments as authorized by section 1329(a)(1)? Surely such relief could not be sought from non-estate property.

For these reasons, the court rejects Short's argument and concludes that tax refunds are property of the estate. But, of course, that does not end the inquiry. The question remains as to whether such property is subject to turnover.

Section 542(a) of the Bankruptcy Code tells us that a person in possession of property of the estate shall deliver that property or its value to the trustee. The Trustees rely upon the plain language doctrine to insist that section 542(a) allows them to seek turnover of the tax refunds from the debtors. But, the debtors also rely upon the plain language doctrine to rebut the Trustees' argument. They argue that by its terms section 542(a) only applies to property that a trustee may use, sell, or lease under section 363. And this qualification, they say, must be read in light of section 1303, which provides that the debtor shall have, *exclusive of the trustee*, the rights and powers of the trustee under sections 363(b),(d),(e),(f) and (l). 11 U.S.C. § 1303.

The debtors' position is more persuasive, especially when bolstered by other provisions of chapter 13. Not only do sections 1303 and 1304 give chapter 13 debtors the powers of a trustee under section 363, but section 1306(b) provides that debtors shall remain in possession of all property of the estate unless a confirmed plan provides otherwise. It is also instructive (although not necessarily controlling) that while section 1302(b) requires the Trustees to perform many of the duties of a chapter 7 trustee, it does not require them to collect property of the estate.

7

11 U.S.C. §§ 1302(b), 704(a)(1). Accordingly, while tax refunds are property of the estate, the Trustees may not compel their turnover pursuant to section 542(a).

As a fallback position, the Trustees argue that even if income tax refunds are not subject to turnover, they can still form the basis for proposed plan modifications by the Trustees or other creditors. Short argues that modification is not possible because the Trustees and creditors are barred from seeking such relief by the doctrine of *res judicata*. According to Short, his Trustee could have litigated his right to retain tax refunds at confirmation, but having failed to do so, the Trustee may not do so now. *See Eubanks v. FDIC*, 977 F.2d 166, 173 (5th Cir. 1992).

The same argument advanced by Short was rejected by the District Court for the Eastern District of Texas in *Washington v. Countryman*, 390 B.R. 843 (E.D. Tex. 2007). There, the court held unequivocally that "[t]he issuance of an income tax refund to a debtor, who is making payments under a plan, is clear grounds to seek modification under section 1329." *Id* at 847, citing *In re Meza*, 467 F.3d 874, 878 (5th Cir. 2006).

This court agrees. As the court in *Washington v Countryman* noted, the very purpose of section 1329 is to address changed circumstances. 390 B.R. at 846. "Modification is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." *In re Meza*, 467 F.3d at 877. Consequently, "[t]he burden is not . . . on the trustee, the creditors, or the bankruptcy court to divine that debtors will be receiving a substantial income tax return merely by virtue of the fact that the debtors project disposable income when the original plan was confirmed. . . ." *Washington v. Countryman*, 390 B.R. at 846.

Even though the trustee or a creditor may seek plan modification after the debtor has received a tax refund, a debtor's disclosures concerning tax refunds before plan confirmation

8

could still be probative. For example, if prior to confirmation a debtor disclosed his expectation of a tax refund but made no provision for the refund in his plan, a court might well determine that there were no changed circumstances that would justify plan modification. *Id* at 847 (discussions concerning tax refunds "could be a factor" in a request to modify); *see also In re Meza*, 467 F.3d at 878 (plan modification may require changed circumstances, but not a substantial or unanticipated change in circumstances).

Finally, the parties ask the court to address many other issues that are challenging and sometimes novel. These include: whether a modified plan must comply with section 1325(b); whether tax refunds are projected disposable income; and, whether it makes any difference to plan modification if the refund results from over-withholding or tax credits. These issues are not before the court. While they might require resolution in the context of plan modification, no party has yet moved to modify the debtors' plans to account for the refunds. Therefore, the court defers any ruling on those issues until they are ripe for resolution.

For the foregoing reasons, the court denies the Trustees' motions to compel turnover of the tax refunds  The court will enter orders consistent with this opinion.

# # # END OF MEMORANDUM OPINION # # #